

222 Delaware Avenue ● Suite 900
P.O. Box 25130 ● Wilmington, DE 19899
Zip Code For Deliveries 19801

Writer's Direct Access:
(302) 429-4232
Email:  sbrauerman@bayardlaw.com

May 12, 2014

**BY CM/ECF & HAND DELIVERY**

The Honorable Leonard P. Stark
J. Caleb Boggs Federal Building
844 N. King Street
Wilmington, DE 19801

> Re:    *Technology Innovations Associates LLC v. Google, Inc.*, C.A. No. 13-355-LPS;
> *Technology Innovations Associates LLC v. Samsung Electronics Co., Ltd., et al.*,
> C.A. No. 13-356-LPS

Dear Judge Stark:

Per the Court's` Order dated April 8, 2014 (D.I. 27), Plaintiff Technology Innovations Associates LLC ("TIA") submits this letter brief to explain (1) why Defendants Google and Samsung's proposed claim construction is not case-dispositive and (2) why early claim construction is not appropriate.  Although Defendants' proposed construction is neither proper nor supported under the law regarding claim construction, this letter brief accepts Defendants' construction for the sake of argument.  TIA's submission is not intended to and does not waive TIA's claim construction position or TIA's opposition to Defendants' position.

Defendants' Proposed Claim Construction Does Not Mandate a Finding of Non-Infringement

Defendants propose the following construction for "sticky path:"

> A multi-line area, separate from a scrollable area, that dynamically expands
> and collapses to always display the hierarchical path to the top item in the
> scrollable area

Even under this construction (which is erroneous), Defendants' products satisfy this claim element. [1]  TIA has provided Defendants with representative examples of the functionality in their products that is accused of infringement.  (Exhibit to Doc. 22.)  For the Court's convenience, some of those examples are resubmitted here as Exhibits A and B.  Exhibit A is a

---

[1] TIA also provides this response without the benefit of discovery.  The examples of infringement provided herein are non-limiting, particularly as TIA will be submitting its infringement contentions according to the Scheduling Order, when entered.





The Honorable Leonard P. Stark
May 12, 2014
Page 2

series of screen shots of a Contacts application on an Android-based mobile device.  Exhibit B is a series of screen shots of a Google Messenger instant messaging application on an Android-based mobile device.  Each screen shot on each Exhibit is labeled 1-4 or 1-5 from left to right on the page.

Turning to Exhibit A, the multi-line area is outlined on each screen shot by a yellow box.  This multi-line area contains both the top line on the screen, which has two icons of people on the left and in the middle and a star on the right, and the line below that which is a rectangle with the letter "A" on the left side.  This area is separate from the scrollable area, as shown in Shots 1 and 2, where the name entries under the letter "A" can be seen moving up the screen while the letter "A" and line above it remain unmoved.  The scrollable area is also seen in that a rectangle with the letter "B" now appears in Shot 2 further up the screen from where it was in Shot 1, as it follows the scrolling of the "A" entries up the page.

The dynamic expansion and collapse of the multi-line area is seen in Shots 2, 3 and 4 with green box highlighting in Shot 3.  In Shoa  q1~t 2, the multi-line area is the same as in Shot 1 and contains the line with the people icons and the rectangle "A".  However in Shot 3, the multi-line area has expanded and now contains the line with the people icons as well as part of rectangle "A" and a rectangle with "B."  The rectangle "B" has transitioned from being part of the scrollable area to being part of the multi-line area.  Shot 4 then shows that the multi-line area has collapsed as the last of the "A" entries have moved off the screen with the "A" rectangle then moving off entirely to leave only the "B" rectangle as part of the multi-line area.  The dynamic nature of the expansion and collapse is evident from the difference between Shots 1-4 as the entries under the "A" letter scroll off the screen and the multi-line area resizes (particularly in Shot 3) as that scrolling occurs to let the "B" path be displayed with its entries.

The multi-line area also always displays the hierarchical path to the top item in the scrollable area.  For example, in Shot 1, the top item in the scrollable area is the name entry for "Al".  The hierarchical path to the "Al" item is Contacts Application (the people icon part of the multi-line area)/A, which is displayed in Shot 1.  As "Al" scrolls off the screen, the hierarchical path to the top item is still displayed, as for example in Shot 2, the top item in the scrollable area is "Ar" with a hierarchical path of Contacts Application/A.  Shot 3 also shows the display of the hierarchical path of the top item in the scrollable area as the multi-line area shows a path of Contacts Application/B.

Exhibit B also demonstrates that the Google messenger functionality satisfies the "sticky path" limitation even under Defendants' proposed construction.  As on Exhibit A, the multi-line area on Exhibit B is outlined on each screen shot by a yellow box.  This multi-line area contains both the top line on the screen, which has the Google messenger email icon and the title of the conversation "hello," and the line below that which is an icon for the first person in the conversation (name redacted with a white rectangle).   This area is separate from the scrollable area, as shown in Shots 1 and 2, where the disclaimer text at the bottom of the first person's message and the "Attachments" line in that message can be seen moving up the screen while the first person's icon and name at the top of the message remain unmoved.  The scrollable area is also seen in that a rectangle with an icon and the name of the second person in the conversation



(auser.888) now appears in Shot 2 further up the screen from where it was in Shot 1 and the message underneath the second person's name can be seen on the page.

The dynamic expansion and collapse of the multi-line area is seen in Shots 2, 3 and 4 with green box highlighting in Shots 3 and 4. In Shot 2, the multi-line area is the same as in Shot 1 and contains the Google messenger icon and conversation title "hello" and the icon and redacted name of the first person in the conversation. However in Shot 3, the multi-line area has expanded and now contains the lines with the icons and names of both people in the conversation. The rectangle with the second person's name (auser.888) is transitioning from being part of the scrollable area to being part of the multi-line area. Shot 4 then shows the multi-line area collapsing again as the first person's name moves off the screen entirely to leave only the second person's name and the Google messenger icon and "hello" title as part of the multi-line area. The dynamic nature of the expansion and collapse is evident from the difference between Shots 1-5 as the first person's name and his conversation under his name scrolls off the screen and the multi-line area resizes (particularly in Shots 3-4) as that scrolling occurs to let the second person's name and his conversation be displayed along with further messages in the "hello" conversation (bottom of the screen in Shot 5).

The multi-line area also always displays the hierarchical path to the top item in the scrollable area. For example, in Shot 1, the top item in the scrollable area is the first person's message in the conversation. The hierarchical path to that message is Google Messenger/hello/first person's name. As the first message scrolls off the screen, the hierarchical path to the top item is still displayed, as for example in Shot 3, the top item in the scrollable area is the second person's message with a hierarchical path of is Google Messenger/hello/second person's name (auser.888).

In addition, TIA reserves the right to argue infringement under the Doctrine of Equivalents. Even if Defendants were able to articulate a basis for a finding of no literal infringement (which they cannot), TIA would be able to contend that Defendants' products are insubstantially different and, thus, still infringe.

Early Claim Construction of "Sticky Path" Should Not Proceed

Because Defendants' proposed claim construction of "sticky path" is not dispositive on the issue of infringement, there is no reason to proceed with an early construction process. Plaintiff originally agreed to this process, because Defendants represented that they had a proposed construction that would mandate a finding of non-infringement. If Defendants had such a construction, Plaintiff would have stipulated to non-infringement if Defendants' construction had been accepted. Thus, the Court would have had only to decide claim construction and if the Court accepted Defendants' construction, it would have entered judgment of non-infringement, which Plaintiff would have appealed immediately. The Federal Circuit then would have determined whether the Court's claim construction was correct (which it would not have been), and the case would have resumed with a definitive claim construction in place.



Proceeding with claim construction of "sticky path" now will not lead to those efficiencies, as there is no agreement that Defendants infringe under any proposed claim construction.  Whether the Court construes "sticky path" properly (as Plaintiff would propose) or adopts Defendants' erroneous construction, Plaintiff believes that Defendants infringe.  Thus, regardless of the outcome of any early construction of "sticky path," the case will proceed through discovery and trial just as if the Court decided claim construction in its usual course, following exchange of infringement and invalidity contentions and a period for discovery.  There are no efficiencies gained from deciding the construction of the single term "sticky path" now, and indeed efficiencies will be lost, as other terms are likely to be submitted for construction by the Court later in the proceedings.

Respectfully submitted,

/s/ Stephen B. Brauerman

Stephen B. Brauerman (sb4952)

SBB:tm
Enclosures
cc:  All Counsel