UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

TECHNOLOGY INNOVATIONS ASSOCIATES :
:
    Plaintiff, :
:
v. :   C.A. No. 13-0355-LPS
:
GOOGLE, INC., :
:
    Defendant. :

Richard D. Kirk, Stephen B. Brauerman, Vanessa R. Tiradentes, Sara E. Bussiere, BAYARD P.A., Wilmington, DE

Paul V. Storm, Sarah M. Paxson, GARDERE WYNNE SEWELL LLP, Dallas, TX

    Attorneys for Plaintiff.


Richard L. Horwitz, David E. Moore, Erich W. Struble, POTTER ANDERSON & CORROON LLP, Wilmington, DE

James F. Valentine, James C. Pistorino, Nancy Cheng, Wing H. Liang, PERKINS COIE, LLP, Palo Alto, CA

    Attorneys for Defendant.

**MEMORANDUM OPINION**

August 7, 2014
Wilmington, Delaware

**STARK, U.S. District Judge:**

Pending before the Court is the issue of claim construction for the disputed term "sticky path" in the claims of U.S. Patent Nos. 7,840,619 (the "'619 patent") and 8,280,932 (the "'932 patent") (collectively, "the patents-in-suit").

## I. BACKGROUND

Plaintiff Technology Innovations Associates (hereinafter "TIA" or "Plaintiff") filed this patent infringement action against Defendant Google, Inc. (hereinafter "Google" or "Defendant") on March 4, 2013. (D.I. 1) The patents-in-suit claim a computer data processing system for the management of data objects. TIA alleges infringement of the patents-in-suit by products running Google's Android operating system. (*Id.* at ¶ 8) Specifically, TIA alleges that a "sticky path object hierarchy viewing system," which displays the path back to a top item in a scrollable area, infringes.

The parties advised the Court early in the suit that this case might be amenable to an extremely early claim construction process relating to a single term in dispute, "sticky path." Over the course of several letters and teleconferences, the parties exchanged their proposed constructions of the disputed term and argued over the impact of the Court's adopting either proposed construction. By order dated June 9, 2014, the Court agreed with Google that its proposed early, limited claim construction process would likely facilitate the just, speedy, and inexpensive determination of this action, even if the Court's construction did not prove to be case dispositive. (D.I. 33)

The parties completed early claim construction briefing on the disputed term on July 11, 2014. (D.I. 34, 36, 38, 39) The Court held a *Markman* hearing on July 21, 2014. (*See*

1

Transcript) ("Tr.")

## II. LEGAL STANDARDS

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (internal quotation marks omitted). Construing the claims of a patent presents a question of law. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977–78 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370, 388–90 (1996). "[T]here is no magic formula or catechism for conducting claim construction." *Phillips*, 415 F.3d at 1324. Instead, the court is free to attach the appropriate weight to appropriate sources "in light of the statutes and policies that inform patent law." *Id.*

"[T]he words of a claim are generally given their ordinary and customary meaning . . . [which is] the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Id.* at 1312–13 (internal citations and quotation marks omitted). "[T]he ordinary meaning of a claim term is its meaning to the ordinary artisan after reading the entire patent." *Id.* at 1321 (internal quotation marks omitted). The patent specification "is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).

While "the claims themselves provide substantial guidance as to the meaning of particular claim terms," the context of the surrounding words of the claim also must be considered. *Phillips*, 415 F.3d at 1314. Furthermore, "[o]ther claims of the patent in question, both asserted and unasserted, can also be valuable sources of enlightenment . . . [b]ecause claim terms are

2

normally used consistently throughout the patent . . . ." *Id.* (internal citation omitted).

It is likewise true that "[d]ifferences among claims can also be a useful guide . . . . For example, the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim." *Id.* at 1314–15 (internal citation omitted). This "presumption is especially strong when the limitation in dispute is the only meaningful difference between an independent and dependent claim, and one party is urging that the limitation in the dependent claim should be read into the independent claim." *SunRace Roots Enter. Co., Ltd. v. SRAM Corp.*, 336 F.3d 1298, 1303 (Fed. Cir. 2003).

It is also possible that "the specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess. In such cases, the inventor's lexicography governs." *Phillips*, 415 F.3d at 1316. It bears emphasis that "[e]ven when the specification describes only a single embodiment, the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction." *Liebel–Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004) (internal quotation marks omitted), *aff'd*, 481 F.3d 1371 (Fed. Cir. 2007).

In addition to the specification, a court "should also consider the patent's prosecution history, if it is in evidence." *Markman*, 52 F.3d at 980. The prosecution history, which is "intrinsic evidence," "consists of the complete record of the proceedings before the PTO [Patent and Trademark Office] and includes the prior art cited during the examination of the patent." *Phillips*, 415 F.3d at 1317. "[T]he prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor

3

limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Id.*

A court also may rely on "extrinsic evidence," which "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Markman*, 52 F.3d at 980. For instance, technical dictionaries can assist the court in determining the meaning of a term to those of skill in the relevant art because such dictionaries "endeavor to collect the accepted meanings of terms used in various fields of science and technology." *Phillips*, 415 F.3d at 1318. In addition, expert testimony can be useful "to ensure that the court's understanding of the technical aspects of the patent is consistent with that of a person of ordinary skill in the art, or to establish that a particular term in the patent or the prior art has a particular meaning in the pertinent field." *Id.* Nonetheless, courts must not lose sight of the fact that "expert reports and testimony [are] generated at the time of and for the purpose of litigation and thus can suffer from bias that is not present in intrinsic evidence." *Id.* Overall, while extrinsic evidence "may be useful" to the court, it is "less reliable" than intrinsic evidence, and its consideration "is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." *Id.* at 1318–19.

Finally, "[t]he construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." *Renishaw PLC v. Marposs Societa'per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998). It follows that "a claim interpretation that would exclude the inventor's device is rarely the correct interpretation." *Osram GmbH v. Int'l Trade Comm'n*, 505 F.3d 1351, 1358 (Fed. Cir. 2007).

4

## III. CONSTRUCTION OF DISPUTED TERMS[1]

| Claim Term | "sticky path" [Claim 1 of '519 patent; Claims 1, 6, 8-16 of '932 patent] |
|---|---|
| **Plaintiff's Proposed Construction** | "an area, separate from a scrollable area, that dynamically updates to display the path to the top item in the scrollable area" |
| **Defendant's Proposed Construction** | "a multi-line area, separate from a scrollable area, that dynamically expands and collapses to always display the hierarchical path to the top item in the scrollable area" |
| **Court's Construction** | "an area, separate from a scrollable area, that dynamically updates to display the path to the top item in the scrollable area" |

The parties agree that the term "sticky path" describes an area, separate from the scrollable area, that displays the path back to the top item in the scrollable area.[2] The parties disagree, however, as to whether the sticky path must (i) be multi-lined and (ii) expand and collapse. Plaintiff argues that neither of these are claim limitations, while Defendant insists that both limitations must be read into the construction of "sticky path." The Court agrees with Plaintiff.[3]

---

[1]The parties have agreed on the meaning of certain claim terms. The Court will adopt the parties' proposed constructions for these terms.

[2]The parties agree, as does the Court, that the claims of the patents-in-suit include a hierarchical limitation; however, the Court further agrees with Plaintiff that this limitation does not need to be included in the construction of the term "sticky path."

[3]Claim 1 of the '619 patent states: "when scrolling enters . . . a new open branch . . . an identifier thereof is rendered in a *sticky path* display area . . . adjacent any visible identifier of a previously-entered and still open branch . . . ." (D.I. 37, Ex. B, col. 39:9-12) (emphasis added) The claims of the '932 patent describe the "render[ing] of visible information . . . in a *sticky path*

5

Google contends, and TIA does not dispute, that the term "sticky path" has no "ordinary" meaning to one of skill in the art. (*See* D.I. 34 at 7) Instead, "sticky path" is a term that was coined by the patentee. As Google recognizes, there is no single place in the patent specification where the patentee expressly defines "sticky path." Instead, the Court must consider the entirety of at least the intrinsic evidence to divine the meaning intended by the patentee. "[I]f a disputed term has 'no previous meaning to those of ordinary skill in the prior art[,] its meaning, then, must be found [elsewhere] in the patent.'" *Irdeto Access, Inc. v. Echostar Satellite Corp.*, 383 F.3d 1295, 1300 (Fed. Cir. 2004) (alterations in original) (quoting *J.T. Eaton & Co. v. Atl. Paste & Glue Co.*, 106 F.3d 1563, 1570 (Fed. Cir.1997)). When guidance is not provided in "explicit definitional format," the specification may define claim terms "'by implication' such that the meaning may be 'found in or ascertained by a reading of the patent documents.'" *Id.* (quoting *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Grp., Inc.*, 262 F.3d 1258, 1268 (Fed. Cir. 2001)).

Both sides largely point to the same evidence but argue as to whether it is definitional, and therefore restrictive (Google's view), or, instead, is merely exemplary and not limiting (Plaintiff's view). Although a close call, the Court generally agrees with Plaintiff on this dispute, which drives the Court to adopt Plaintiff's proposed construction of "sticky path."

A portion of the '619 patent's specification describes "sticky path" as a mechanism which, among other things, "dynamically resiz[es] the scrollable area to accommodate the

portion of the display." (*See, e.g.*, D.I. 37, Ex. D, col. 38:20-22) (emphasis added)

[sticky] path display."[4] (D.I. 37, Ex. B, col. 32:42-43) The specification further provides pseudocode, which describes a sticky path area performing this accommodation by expanding and collapsing. (*Id.* at col. 32-33) Elsewhere, as Google emphasizes, there is a single reference in the '619 specification to "multi-line," which describes how "branch[es] successively 'stick[]' in a multi-line window at the top." (D.I. 37, Ex. B, col. 15:1-2) This language, however, appears in a section of the specification explicitly identified as "illustrat[ing] the invention by way of example, not by way of limitation of the principles of the invention." (*Id.*, Ex. B., col. 11:21-28); *see also Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1345 (Fed. Cir. 2001) ("The inventor was careful to consistently use phrases throughout the written description such as: 'In one embodiment [],' 'Before one embodiment [],' 'of other embodiments [],' 'of a preferred embodiment [],' or 'In the particular embodiment.' These phrases reflect the inventor's teaching that his invention could be embodied 'in various ways.'").

A problem with Google's proposed construction is that it appears to require, always and at all times, that the sticky path contain multiple lines. Such a limitation, however, would exclude embodiments in the specification showing single-line, rather than multi-line, sticky paths. (*See, e.g.*, D.I. 37, Ex. B, Fig. 12b) In fact, Google concedes that the claims include situations in which only a single line is present, as long as that single line is "capable of" expanding to multiple lines, as the path itself gets longer. While Google expressed willingness during the hearing to modify its proposed construction, the ambiguity described here – namely Google's proposed limitation that the path area be multi-lined while acknowledging that it does

---

[4]The '619, '932 and parent patent (U.S Patent No. 7,275,063) share the same specification.

not have to always consist of multiple lines – plagues the construction Google proposed and briefed.

The claim language suggests no reason to include Google's other proposed limitation, requiring "expanding and collapsing." This conclusion is supported by the prosecution history, which does not reflect – contrary to Google's assertion – that the applicant distinguished the prior art on the basis of the patented invention's expanding and collapsing feature. Google points to the applicant's use of the phrase "expanding and collapsing" in a Response to First Office Action during TIA's prosecution of the '932 patent. (D.I. 34 at 10-11) (April 6, 2012) But it appears that the applicant was distinguishing its invention on the basis of expanding and collapsing folders within the scrollable area, rather than the "sticky path."

Google further points to the applicant's use of the phrase "expandable/shrinkable window," in a Response to Final Office Action during prosecution of the parent of the patents-in-suit, U.S Patent No. 7,275,063 (the "'063 Patent"), dated October 25, 2006. (*Id.*, Ex. H) TIA does not dispute that the claims in the '063 patent require that the sticky path portion "automatically expand" and "automatically shrink." (D.I. 39 at 8) But importing this limitation into the claims here, as Google would do, would eliminate "the substantive differences between the claims" of the '063 and '619 patents. *Arlington Indus.*, 632 F.3d at 1254 (citing *Phillips*, 415 F.3d at 1314) ("[C]laim 12 of the parent . . . patent recites 'a split . . . adaptor,' while claim 8 of the '050 patent omits the 'split' modifier. . . . Reading a split limitation . . . into the term . . . would render these additional modifiers superfluous, which weighs against doing so."). Claim 1 of the '063 patent (proposed claim 8 as of the date of the response letter) recites a "dynamically-updating sticky path . . . that automatically expands . . . [and] automatically shrink[s]." Claim 1

8

of the '619 patent does not include the expanding and collapsing language of the '063 patent. This suggests that the "sticky paths" described in the '619 patent are not required to automatically expand and collapse.

## CONCLUSION

For the forgoing reasons, the Court will construe the disputed claim term "sticky path" in the claims of the '619 and '932 patents consistent with this Memorandum Opinion. An appropriate order follows.